UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

S.K., et al.,

                              Plaintiffs,

          -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.

Case No. 1:21-cv-07291 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs S.K. and G.K., the parents of A.K., a minor with disabilities, bring this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, to recover attorneys' fees incurred by Plaintiffs during their successful effort to secure an appropriate education placement for A.K., including the contested administrative proceeding before an Impartial Hearing Officer. *See* ECF No. 1 ("Complaint" or "Compl."). Now before the Court is Plaintiffs' motion for summary judgment, seeking the following from Defendant New York City Department of Education ("DOE"): (1) $199,176.75 in attorneys' fees for Kule-Korgood & Associates, of which $132,059.50 is attributable to the administrative proceedings and $67,117.25 is attributable to this action; (2) $24,475.25 in attorneys' fees for Ellen Saideman, all of which is attributable to her work in this action; and (3) $653 in costs. The DOE opposes the motion in part, arguing that the rates and hours requested by Plaintiffs are unreasonable and excessive.

For the reasons set forth below, the motion is GRANTED in part, subject to the modifications described herein.

## BACKGROUND

The following facts are undisputed.[1]  Plaintiffs, S.K. and G.K., placed their son, A.K., at the Gersh Academy for the 2016 through 2017 school year.  56.1 Counter ¶ 4.  Prior to that placement, A.K. had been given an Individualized Education Program ("IEP") from the DOE, *id.* ¶ 2, but Plaintiffs did not believe that the DOE's proposed IEP and placement would provide A.K. "with a free appropriate public education," *id.* ¶ 4.  On November 2, 2016, Plaintiffs filed a due process complaint with the DOE, and the case was assigned an Impartial Hearing Officer ("IHO").  *Id.* ¶¶ 5-6.  At the time, Plaintiffs had retained the law firm Kule-Korgood & Associates, P.C. to represent them in the administrative proceedings, using a partially-contingent fee arrangement.  *Id.* ¶ 7.  Roughly two months after the due process complaint was first filed, the Committee on Special Education at the DOE convened another IEP meeting with regard to A.K., and "produced a new IEP, 2 Prior Written Notices, and a new School Location letter,"

---

[1] Plaintiffs submitted the following papers in support of their motion:  Plaintiffs' brief in support of their motion for summary judgment and attorneys' fees (ECF No. 47 or "Br."); Declaration of Plaintiff S.K. (ECF No. 36 or "S.K. Decl."); Declaration of Ellen Saideman in Support of Motion (ECF No. 37 or "Saideman Decl."); Declaration of Lauren A. Goldberg (ECF No. 38 or "Goldberg Decl."); Declaration of Kira I. Epstein (ECF No. 39 or "Epstein Decl."); Declaration of Emily Thomas (ECF No. 40 or "Thomas Decl."); Declaration of Michele Kule-Korgood (ECF No. 41 or "MKK Decl."); Declaration of Elisa Hyman (ECF No. 42 or "Hyman Decl."); Declaration of Lauren A. Baum (ECF No. 43 or "Baum Decl."); Declaration of Jesse Cole Cutler (ECF No. 44 or "Cutler Decl."); Declaration of Christina D. Thivierge (ECF No. 45 or "Thirvierge Decl."); Rule 56.1 Statement (ECF No. 46 or "56.1 Statement").

Defendant submitted the following papers in opposition to Plaintiffs' motion:  Defendant's brief in opposition (ECF No. 67 or "Opp."); Declaration of Jeffrey M. Cassuto (ECF No. 68 or "Cassuto Decl."); Rule 56.1 Counterstatement (ECF No. 69 or "56.1 Counter"); Declaration of W. Simone Nicholson (ECF No. 70 or "Nicholson Decl.").

Plaintiffs submitted the following papers in reply to the opposition:  Plaintiffs' reply brief in support of their motion (ECF No. 78 or "Reply"); Reply Declaration of Ellen Saideman (ECF No. 73 or "Saideman Reply"); Reply Declaration of Michele Kule-Korgood (ECF No. 74 or "MKK Reply"); Declaration of Lynette Labinger (ECF No. 75 or "Labinger Decl."); Declaration of Steven L. Goldstein (ECF No. 76 or "Goldstein Decl."); Declaration of Sonal Malpani (ECF No. 77 or "Malpani Decl.").

recommending a new plan and placement for A.K.  *Id.*  ¶ 8.  Thereafter, Plaintiffs amended their

complaint to address the new IEP.  *Id.* ¶ 9.

The DOE contested Plaintiffs' requested relief.  *Id.* ¶ 10.  The hearing before the IHO

involved 11 proceedings over 10 days during the time period of January 24, 2017 through May

25, 2018.  *Id.*  ¶ 11.  At those proceedings, the IHO heard testimony from six witnesses (one of

whom was a DOE witness) and admitted between 46 and 56 exhibits into evidence (19 of which

were DOE exhibits).  *See id.* ¶¶ 10, 13.  The IHO oversaw status conferences, and the parties

submitted closing briefs after the conclusion of testimony.  *Id.* ¶¶ 12-13, 24.

Plaintiffs' counsel drafted two additional briefs in response to issues raised by the DOE.

First, after the new IEP was produced in January 2017, Plaintiffs had to brief the impact of that

mid-hearing IEP meeting on the proceeding and the DOE's burden of proof.  *Id.*  ¶ 15.

Additionally, after the DOE removed A.K.'s 1:1 paraprofessional at Gersh Academy, Plaintiffs'

counsel requested a pendency order to restore the service.  *Id.*  ¶¶ 17-22.  The IHO asked

Plaintiffs to provide legal authority regarding his power to restore that service, and Plaintiffs

drafted another brief in response.  *Id.*  Notably, the IHO thereafter granted Plaintiffs' request and

restored the paraprofessional for A.K.  *Id.* ¶ 23.

On August 30, 2018, the IHO issued his final decision, granting Plaintiffs the relief

requested.  *Id.* ¶¶ 25-26.  Specifically, the IHO found that: (i) Gersh Academy provided A.K.

with an appropriate program, (ii) A.K.'s parents had acted reasonably and did not impede the

Committee on Special Education's process, (iii) A.K.'s parents were entitled to reimbursement

for funds expended on A.K.'s tuition, and (iv) the DOE should make direct payment to Gersh

Academy for any outstanding balance for the school year.  *Id.*  ¶ 26.  The DOE did not appeal the

decision; therefore, Plaintiffs were the uncontested "prevailing party."  *Id.* ¶¶ 27-28.

After Plaintiffs filed a timely Notice of Claim for fees and costs with the Comptroller, the parties engaged in lengthy settlement discussions. *Id.* ¶¶ 29-30. The Complaint in this action, filed on August 30, 2021, was the first action for attorneys' fees that attorney Ms. Kule-Korgood has sought since 1995. *Id.* ¶¶ 31-32; MKK Decl. ¶ 64. On June 3, 2022, the DOE submitted a written offer of settlement in the amount of $90,000. 56.1 Counter ¶ 34. Plaintiffs rejected that offer, and made a counter-offer of $125,000. *Id.* ¶ 35. Despite continued attempts to settle during the pendency of this motion, which was not fully briefed until February 1, 2023, the parties' settlement efforts failed. The DOE has indicated that the $90,000 offer is non-negotiable. *Id.* ¶ 36.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Id*. Thus, "the substantive law will identify which facts are material." *Id.*

At summary judgment, the Court's task is simply to "discern[] whether there are any genuine issues of material fact to be tried, not to decid[e] them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Therefore, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Est. of*

*Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).  "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'"  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (internal citation omitted); *see also* Fed. R. Civ. P. 56(c)(4).

## DISCUSSION

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(a).  The statute therefore provides a basis for parents to bring complaints regarding the DOE's failure to provide "a free appropriate public education," and to have an "impartial due process hearing" at which they may seek relief from the local educational agency.  20 U.S.C. § 1415(f); *see also R.P. v. N.Y.C. Dep't of Educ.*, No. 21-cv-04054 (JMF), 2022 WL 1239860, at *2 (S.D.N.Y. Apr. 27, 2022).  In an action brought pursuant to the IDEA, the "prevailing party" at the hearing may be awarded reasonable attorneys' fees by the Court.  20 U.S.C. § 1415(i)(3)(B)(i); *R.G. v. N.Y.C. Dep't of Educ.*, No. 18-cv-06851 (VEC), 2019 WL 4735050, at *1 (S.D.N.Y. Sept. 26, 2019).  "Such an award may cover work performed in connection with the hearing, before the district court, and on appeal from the district court."  *R.P.*, 2022 WL 1239860, at *2 (collecting cases).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

"In considering a claim for attorney's fees under a federal fee-shifting statute, a district court must . . . first determine whether the party seeking the award is in fact a prevailing party."

5

*Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006).  "If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorney's fees."  *Id*.  Here, the DOE does not dispute that Plaintiffs are the prevailing party.  56.1 Counter ¶ 28.  Therefore, the remaining inquiry for the Court is whether the requested fees are "reasonable."  20 U.S.C. § 1415(i)(3)(B)(i); *see also A.R. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005).  In order to assess whether fees are reasonable, a court must "determin[e] a presumptively reasonable fee, [which is] reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."  *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).  Accordingly, the Court must first determine a reasonable rate for each timekeeper, and then a reasonable number of hours worked.

### A. Reasonable Hourly Rate

A reasonable rate, according to the IDEA, is "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of the services furnished."  20 U.S.C. § 1415(i)(3)(C).  This analysis is case-specific, and courts ought to consider a variety of factors in assessing the reasonableness of a rate, including the *Johnson* factors.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) ("[T]he district court, in exercising its considerable discretion, [ought] to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."); *see generally Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  Those *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys'

customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3).  Courts "need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award."  *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17-cv-07632 (PAE), 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9, 2018).  Because a reasonable hourly rate is a "rate a client would be willing to pay," courts also should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and that a client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case."  *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190.  A district court has "considerable discretion" in determining a reasonable hourly rate.  *See id.*; *see also R.P.*, 2022 WL 1239860, at *3.

The DOE argues that the requested rates exceed the standard attorneys' fees rates for IDEA litigation in this District.  *See* Opp. at 7.  Plaintiffs seek the following rates for their attorneys and paralegals:[2]

---

[2] The data in the following charts comes from the parties' briefs, as well as the bills submitted by Ms. Kule-Korgood and Ms. Saideman.  *See* ECF No. 37-2 ("Saideman Bill"); ECF No. 41-3 ("MKK Bills"); ECF No. 73-1 ("Saideman Reply Bill"); ECF No. 74-4 ("MKK Reply Bill").

The Court notes that Plaintiffs' total requested fees for Kule-Korgood & Associates ($199,176.75, *see* Reply at 10) is the sum of the administrative work ($132,059.50), and federal billed work ($67,117.25, *see* MKK Bills at 31; MKK Reply Bill at 11).  However, that calculation erroneously includes bills for (1) $10 more than should be charged for Ms. Hutchinson, *see infra* n.7; (2) a rate of $250 an hour for Ms. Thomas for the period starting in August 2022, *see infra* n.5; and (3) a rate of $275 for Ms. Ayre, *see infra* n.10.

| Administrative Proceeding:  Attorneys' Requested Fees & Hours | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Michele Kule-Korgood | $525 | 190.69 | $100,112.25 |
| Kule-Korgood (Travel) | $262.50 | 22 | $5,775.00 |
| Lauren Goldberg | $300 | 31.18 | $9,354.00 |
| Goldberg (Travel) | $150 | 2 | $300.00 |
| Kira Epstein | $400 | 26.82 | $10,728.00 |
| Melissa Ayre | $250 | 13.01 | $3,252.50 |
| **Total** | | **285.7** | **$129,521.75** |

| Administrative Proceeding:  Paralegals/Interns' Requested Fees & Hours | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total |
| Noelle Giesse | $125 | 7.44 | $930.00 |
| Michele Hutchinson | $125 | 2.09 | $261.25 |
| Lauren Riddell | $125 | 8.17 | $1,021.25 |
| **Total** | | **17.7** | **$2,212.50** |

| Federal Proceeding:  Attorneys' Requested Fees & Hours | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total[3] |
| Michele Kule-Korgood | $525 | 117.05 | $53,161.50 |
| Ellen Saideman | $550 | 71.50 | $24,475.25[4] |
| Joseph DaProcida | $425 | 1.66 | $705.50 |
| Emily Thomas | $200[5] | 28.8 | $5,288.80 |
| **Total** | | **219.01** | **$83,631.05** |

---

[3] Kule-Korgood & Associates and Ms. Saideman each applied a 20% reduction to bills from August 2022 to January 2023 in the "exercise[ of] additional billing judgment." MKK Reply Decl. ¶ 57; *see* MKK Reply Bill; Saideman Reply Bill. Ms. Kule-Korgood did not apply that reduction to about 8.75 hours from August 2022 to January 2023. MKK Reply Bill at 11.

[4] Ms. Saideman applied several deductions to her fees, some that the Court is unable to identify because these adjustments are not spelled out in Ms. Saideman's declarations. *See* Saideman Bill (requesting $8,327.25 for bills until August 2022, where the bills totaled $10,092.50 without deductions for 19.5 hours, or about $517.56 an hour); Saideman Reply Bill (requesting $16,148.00 for work after August 2022, where the bills totaled $22,020 without deductions for 52 hours billed, or about $423.46 an hour).

[5] Kule-Korgood & Associates apparently billed for Ms. Thomas's work at $250 an hour for the period starting in August 2022. *See* MKK Reply Bill at 11. Because Plaintiffs contend in their opening brief that they are only seeking a rate of $200 an hour for Ms. Thomas, *see* Br. at 4 n.2, the Court has adopted that $200 rate for purposes of this section.

| Federal Proceeding:  Paralegals/Interns' Requested Fees & Hours | | | |
|---|---|---|---|
| Timekeeper | Requested Rate | Hours Billed | Total[6] |
| Noelle Giesse | $125 | 1.9 | $208.50 |
| Michele Hutchinson | $125 | 0.08 | $10.00[7] |
| Fiona Hathaway | $125 | 20 | $2,245.75 |
| Amanda Vice | $125 | 50.16 | $5,016 |
| **Total** | | **72.14** | **$7,480.25** |

Upon consideration of all of the *Johnson* factors, the Court concludes that certain of the proposed rates are excessive, though not to the degree argued by the DOE.  To start, the proceedings here involved 11 proceedings over 10 days and spanned over a year and half, resulting in a total victory for Plaintiffs.  *See* 56.1 Counter ¶ 11; *see also* ECF No. 31 ("IHO Decision"); *V.W. v. N.Y.C. Dep't of Educ.*, No. 20-cv-02376 (RA), 2022 WL 37052, at *4 (S.D.N.Y. Jan. 4, 2022) (noting high degree of success weighs in favor of higher rate).  While the degree of success is generally the "most critical factor in determining the reasonableness of a fee award," it is not alone dispositive of a rate.  *R.P.*, 2022 WL 1239860, at *3.

The case was clearly contested, unlike the cases to which the DOE cites in its papers – a factor that supports a higher award.  *See, e.g.*, *V.W.*, 2022 WL 37052, at *5 (collecting cases where higher fees were awarded for contested IHO proceedings); *Y.S. v. N.Y.C. Dep't of Educ.*, No. 21-cv-02159 (RA), 2022 WL 4096071, at *3 (S.D.N.Y. Sept. 6, 2022) (noting that length of hearing and whether it was contested are factors to consider in determining reasonable hourly rate).  The DOE nonetheless argues that, even though it contested the complaint, the hearing was not so complex as to warrant a high rate or award.  *See* Opp. at 8-9.  The Court is not persuaded by this argument.  On its face, this contested matter was lengthier than most cases; it involved 11

---

[6] These totals reflect a 20% reduction to bills from August 2022 to January 2023.  *See supra* n.3.

[7] Kule-Korgood & Associates billed for only 0.08 hours of work by Ms. Hutchinson in the federal proceeding.  *See* MKK Bills at 31.  At a rate of $125 an hour, the total would be $10.  *See id*.  Perhaps due to a mathematical error, the bill reflects a charge of $20 for her work.  *Id.*

proceedings over 10 days, which is more than or equal to the duration of hearings found to warrant a higher award.  *See* 56.1 Counter ¶ 11; *see, e.g.*, *C.B. v. N.Y.C. Dep't of Educ.*, No. 18-cv-07337 (CM), 2019 WL 3162177, at *2, *6-8 (S.D.N.Y. July 2, 2019) (awarding $400 rate for contested proceeding, in which DOE put on two witnesses and offered its own evidence that lasted 9.8 hours); *C.D.*, 2018 WL 3769972, at *2, *13 (awarding $400 rate for contested proceeding that spanned 11 days, involved hundreds of pages of exhibits and multiple witness interviews, and resulted in a split decision).  Indeed, the length of the hearing – which was protracted and took place over a year and a half – necessitated additional preparation from counsel to prepare for each proceeding.  *See, e.g.*, MKK Decl. ¶¶ 42-43; MKK Reply Decl. ¶¶ 18-21.  The DOE itself put on one witness, and offered 19 exhibits in support of its IEP.  56.1 Counter ¶ 10; *cf. D.B. v. N.Y.C. Dep't of Educ.*, No. 18-cv-07898 (AT) (KHP), 2019 WL 6831506, at *4 (S.D.N.Y. Apr. 22, 2019), *report and recommendation adopted*, 2019 WL 4565128, at *2-3 (S.D.N.Y. Sept. 20, 2019) (awarding $450 rate to senior attorney in contested proceeding where DOE did not put on a case and did not appeal).  Additionally, during the proceedings, Plaintiffs had to respond to a new IEP recommendation (produced after the first complaint was filed) and had to seek relief when the DOE removed A.K.'s paraprofessional while the proceedings were ongoing.  *See* 56.1 Counter ¶¶ 15, 19-23.  Ms. Kule-Korgood contends that her office rarely files closing briefs in administrative proceedings, and the need for one here was clear in light of the "difficult legal issues and . . . voluminous record."  MKK Reply Decl. ¶ 49.  Overall, "this case appears to have featured more hearings and a greater overall timespan before administrative bodies, and may have involved more witnesses, than many IDEA cases."  *C.D.*, 2018 WL 3769972, at *5 n.7.  This weighs in favor of a higher rate.

The DOE also argues that the "weight of recent persuasive caselaw supports" rates that are significantly lower than requested here.  Opp. at 8.  To be sure, the rates proposed by

Plaintiffs are on the higher end of rates awarded in this District.  *See, e.g.*, *C.D.*, 2018 WL 3769972, at *6 (noting rates as of 2018 for experienced lawyers were about $350 to $475).  But it is worth noting that much of the case law in this District involves attorneys from law firms who regularly seek fees, such as the Cuddy Law Firm.  *See K.O. v. N.Y.C. Dep't of Educ.*, No. 20-cv-10277 (LJL), 2022 WL 1689760, at *9 (S.D.N.Y. May 26, 2022) ("The reasonable attorneys' fees for counsel from the Cuddy Law Firm ('CLF') is well-trodden ground in this District.  Numerous judges have weighed in, with different figures.") (collecting cases).  The attorneys seeking fees in this case, however, do not usually seek fees from a court, and therefore there is no direct precedent by which to compare their court-ordered rates.  *See* 56.1 Counter ¶¶ 31-32; MKK Decl. ¶ 64 (noting that Ms. Kule-Korgood "had not filed a complaint in court solely for attorneys' fees from 1995" until the instant action); Saideman Decl. ¶¶ 11, 24 (noting that in many years of experience, Ms. Saideman has only had to go to court for fees once before, in 1990).  Therefore, the Court considers awards in similar cases, while recognizing the case-specific (and attorney-specific) factors as well.

### 1.  Attorneys Kule-Korgood and Saideman

The Court turns first to the senior attorneys in this case.  As of at least 2018, "[c]ourts in this District generally have awarded between $300 and $475 per hour to senior or experienced attorneys in IDEA cases, landing on the higher end of the range based on greater experience and complexity of the matter."  *D.B.*, 2019 WL 6831506, at *4; *see also D.B.*, 2019 WL 4565128, at *2 (awarding rate of $450 per hour in light of attorneys' experience and nature of proceedings); *see J.R. v. N.Y.C. Dep't of Educ.*, No. 19-cv-11783 (RA), 2021 WL 3406370, at *3 (S.D.N.Y. Aug. 4, 2021) ("The prevailing market rate for experienced, special-education attorneys in the New York area circa 2018 was between $350 and $475 per hour.").  Notably, however, these rates were adopted by courts as early as 2014.  *See K.L. v. Warwick Valley Cent. Sch. Dist.*, 584

F. App'x 17, 19 (2d Cir. 2014) (noting that prevailing rates in 2014 were $350 to $450).  A court may consider the passage of time in justifying a higher reasonable rate.  *See N. L-C. v. N.Y.C. Dep't of Educ.*, No. 20-cv-08243 (ER), 2022 WL 831820, at *2 (S.D.N.Y. Mar. 18, 2022) ("Judges in this district have also recognized that the passage of time may justify somewhat higher rates for the same type of work performed by the same senior attorneys.").  Ms. Saideman's requested rate of $550 and Ms. Kule-Korgood's requested rate of $525 exceed the range of rates generally awarded in IDEA cases.  *See, e.g.*, *K.O.*, 2022 WL 1689760, at *9 (noting that a requested rate of $550 was at "the extreme high end" of rates in this District).  With these common rates in mind, the Court will consider the reasonableness of the proposed rates in light of the *Johnson* factors.

Ms. Kule-Korgood, the lead attorney on this matter for the majority of the proceedings, was previously a special education teacher, and has practiced special education law for nearly 29 years.  *See* MKK Decl. ¶¶ 14-15, 24 (noting 28 years of practice as of August 2022).  She has litigated in this area in both state and federal court, has written and spoken on special education litigation, and is otherwise actively involved in this specialized area of the law through committees and boards.  *See* MKK Decl. ¶¶ 16-23.  In her many years of practice, she has not filed a complaint for attorneys' fees since 1995.  *See id.* ¶ 64.  Other attorneys in the field have submitted declarations attesting to Ms. Kule-Korgood's reputation and rates.[8]  Ms. Kule-

---

[8] In support of their motion for attorneys' fees, Plaintiffs submitted several declarations from other special education attorneys.  *See* Declaration of Elisa Hyman (ECF No. 42 or "Hyman Decl."); Declaration of Lauren A. Baum (ECF No. 43 or "Baum Decl."); Declaration of Jesse Cole Cutler (ECF No. 44 or "Cutler Decl."); Declaration of Christina D. Thivierge (ECF No. 45 or "Thivierge Decl."); Declaration of Lynette Labinger (ECF No. 75 or "Labinger Decl."); Declaration of Steven L. Goldstein (ECF No. 76 or "Goldstein Decl."); Declaration of Sonal Malpani (ECF No. 77 or "Malpani Decl.").  The DOE argues that these declarations are unpersuasive and should not be considered by the Court.  *See* Opp. at 15.  While some "[c]ourts in this District have determined that these types of affidavits are of limited value if they do not also provide the context necessary to properly apply the *Johnson* factors[,]" *H.C. v. N.Y.C. Dep't*

Korgood states that attorneys for the DOE have "repeatedly informed [her] that they consider [her] to be at the highest echelon of attorneys in the field in New York . . ."  MKK Reply Decl. ¶ 40, and the DOE does not appear to dispute that Ms. Kule-Korgood has a good reputation. While there are few cases in this District that are on all fours with the facts presented here, generally speaking, courts are inclined to award very experienced attorneys, in contested cases, fees on the high end of the aforementioned range; and, even in 2014, those rates neared $500 an hour.  *See, e.g.*, *A.R. v. N.Y.C. Dep't of Educ.*, No. 12-cv-07144 (RSW), 2014 WL 5462465, at *8 (S.D.N.Y. Oct. 28, 2014) (awarding senior attorney with over 35 years' special education experience $500 per hour in contested case); *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11-cv-05243 (GBD) (FM), 2012 WL 5462602, at *1 (S.D.N.Y. Nov. 8, 2012), *report and recommendation adopted*, 2014 WL 1092847 (S.D.N.Y. Mar. 17, 2014) (awarding experienced counsel $475 per hour for a hearing that spanned fourteen days and involved an appeal). Considering all of the *Johnson* factors, and in particular the length and complexity of the contested IHO proceeding, Ms. Kule-Korgood's extensive experience in the field and good reputation, the high degree of success achieved by counsel, and the rates of those awarded in similar cases, the Court concludes that $500 an hour is reasonable for Ms. Kule-Korgood's work in this matter.[9]

---

*of Educ.*, No. 20-cv-00844 (JLC), 2021 WL 2471195, at *4 n.5 (S.D.N.Y. June 17, 2021) (collecting cases), other courts consider affidavits that provide customary rates in the community, *see, e.g.*, *D.B.*, 2019 WL 6831506, at *4 ("It is appropriate for the Court to take into account these current rates paid to IDEA practitioners in this district by paying clients."); *M.K. v. Arlington Cent. Sch. Dist.*, No. 16-cv-05751 (NSR), 2019 WL 92004, at *4 (S.D.N.Y. Jan. 3, 2019) (considering affidavits of other IDEA attorneys as to attorneys' rates and reputation). Because the Court concludes that these declarations provide some useful context for its analysis under the *Johnson* factors, it will accord them some weight to the extent they bolster other inferences related to the requested rates and the attorneys' reputations.

[9] Though Ms. Kule-Korgood practices in New York, she charged half her rate for travel time to and from the IHO proceedings.  *See* MKK Decl. ¶ 80.  "Courts generally approve fees, at 50% of

Ms. Saideman also has an extensive background in this area of the law.  She has worked in disability rights law since around 1988.  Saideman Decl. ¶ 7.  In addition to her experience in litigation and drafting amicus briefs in the area of disability rights, she has experience providing continuing legal education to other lawyers in special education law, and also teaches legal writing.  *See id.* ¶¶ 7-24.  A court has ruled on her rate only once before, in 1990.  *Id.* ¶¶ 11, 24.  Ms. Saideman was brought in to assist Kule-Korgood & Associates with the instant attorneys' fees motion.  She was not involved in the contested administrative proceeding.  Considering all of the *Johnson* factors, including her experience and reputation, but in light of her limited participation here, the Court concludes that a rate of $450 an hour is reasonable for Ms. Saideman's work in this particular matter.

### 2.  Attorneys Lauren Goldberg, Joseph DaProcida, Kira Epstein, Melissa Ayre, and Emily Thomas

Plaintiffs request the following rates for the junior-, mid-, and senior-level associates who worked on this case:  $300 an hour for Ms. Goldberg, who was lead counsel on the case for a time and had roughly nine years of practice when this motion was filed; $425 an hour for Mr. DaProcida, who has been in legal practice for 31 years, but who is relatively new to IDEA cases; $400 an hour for Ms. Epstein, who had roughly 12 years of practice when this motion was filed; $250[10] an hour for Ms. Ayre, who had roughly nine years of practice when this motion was filed;

---

an attorneys' usual rate, for reasonable travel conducted in service of ongoing litigation." *C.D*, 2018 WL 3769972, at *10.  The Court will thus reduce Ms. Kule-Korgood's rate of $500 to $250 for her travel time.

[10] In Plaintiffs' opening brief, they request $250 an hour for Ms. Ayre.  *See* Br. at 4, 14.  However, Ms. Kule-Korgood indicates that her firm billed for Ms. Ayre's work at $275 an hour, and some of the math is consistent with this higher rate.  *See, e.g.*, MKK. Decl. ¶ 83.  Because the opening brief, however, requests a rate of $250 an hour, the Court will presume that is the requested rate.

and $200 an hour for Ms. Thomas, who was admitted to the bar in June 2022.  *See* Br. at 4; *see also* MKK Decl. ¶¶ 75-77.

Courts in this District have concluded that rates for mid-level attorneys are reasonable in the range of $200 to $350 an hour.  *See, e.g.*, *C.D.*, 2018 WL 3769972, at *6-7 (awarding $350 an hour to mid-level associate who was lead counsel); *D.B.*, 2019 WL 6831506, at *5 (awarding $300 and $285 an hour to mid-level associates).  Ms. Goldberg, who has about 9 years' experience in special education law, has represented hundreds of students with disabilities and their families.  *See* Goldberg Decl. ¶¶ 12-13, 18.  In light of her experience and role in the administrative proceeding, the Court concludes that $300 an hour is a reasonable rate for Ms. Goldberg.

Mr. DaProcida has decades of litigation experience, and roughly 13 years of experience in special education proceedings.  MKK Decl. ¶ 76.  Even though much of his experience comes from other areas of the law, the Second Circuit has recognized that "the most important legal skills are transferrable . . . ."  *I.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 81 (2d Cir. 2003).  However, he only contributed 1.66 hours to the federal action.  *See* MKK Bills at 31.  This weighs against a higher award.  *See  A.B. v. N.Y.C. Dep't of Educ.*, No. 1:20-cv-03129 (SDA), 2021 WL 951928, at *6 (S.D.N.Y. Mar. 13, 2021) (awarding experienced attorney $300 an hour for "limited role in the case").  While experienced, in light of Mr. DaProcida's minimal role in this litigation, the Court concludes that the requested rate of $425 is unreasonable, and a rate of $300 an hour is instead consistent with the *Johnson* factors for his work in this particular matter.

Similarly, Ms. Epstein is an experienced litigator, with about 12 years' experience in the special education world.  *See* Epstein Decl. ¶¶ 12-14.  Her primary role in this case involved legal research and writing.  *Id.*  In light of her experience, her role in this case, and the customary rates awarded in this District, the Court concludes that $400 an hour is excessive under the

circumstances, and that $300 an hour is the reasonable rate for her services here.  Ms. Ayre, too, has approximately 9 years of experience, and though she did not submit her own declaration, she apparently primarily summarized transcripts of the proceedings for later review.  *See* Br. at 14. Because her rate is consistent with the rates charged by associates who generally perform this type of task (that is, more junior associates), the Court concludes that her rate of $250 an hour is reasonable.

Finally, courts in this District generally charge around $200 an hour for associates with three or fewer years of experience.  *See, e.g.*, *R.P.*, 2022 WL 1239860, at *4 (collecting cases). Therefore, the Court concludes that the $200 an hour rate requested for Ms. Thomas is reasonable.

### 3.   Paralegals Noelle Giesse and Michele Hutchinson, and Law Students Lauren Riddell, Fiona Hathaway, and Amanda Vice

Plaintiffs seek $125 an hour for the work performed by two paralegals and three law students.  Br. at 15; MKK Reply ¶ 54.  Generally, in this District, paralegals receive rates of $100 to $125 an hour, and "with evidence of specialized qualifications typically receive $120- or $125-per-hour."  *C.B.*, 2019 WL 3162177, at *9 (collecting cases); *see R.P.*, 2022 WL 1239860, at *4 (concluding $125 was a reasonable hourly rate for experienced paralegals).  Evidence of special qualifications include "formal paralegal training, licenses, degrees, or certifications or longer paralegal experience."  *C.B.*, 2019 WL 3162177, at *9 (internal quotations omitted).  The two paralegals in this case – Ms. Giesse and Ms. Hutchinson – demonstrate these specialized qualifications.  Ms. Giesse has an MBA, and was formally trained in the field through the Council of Parent Attorneys and Advocates SEAT Training.  *See* Br. at 15.  She has also been a paralegal for roughly four years.  *See id.*  Ms. Hutchinson has over 13 years of experience as a paralegal for Kule-Korgood & Associates.  *See id.*  Both paralegals were centrally involved in

the IHO proceedings.  MKK Decl. ¶ 77.  Accordingly, the Court concludes that, considering the *Johnson* factors, the requested rate of $125 an hour is reasonable for the paralegals.

Defendant contends that, for the law students, $90 is a reasonable hourly rate.  *See* Opp. at 14.  Plaintiffs have only pointed to one case in which students were awarded $125 an hour. Reply at 5 (citing *M.C. v. Dep't of Educ. of City of New York*, No. 12-cv-09281 (CM) (AJP), 2013 WL 2403485, at *7 (S.D.N.Y. June 4, 2013), *report and recommendation adopted,* 2013 WL 3744066 (S.D.N.Y. June 28, 2013).  That case, however, relied on the prevailing rates for paralegals to conclude that $125 an hour was reasonable.  While Ms. Vice and Ms. Hathaway have some experience in special education settings, *see* ECF No. 41-5 at 3 (Hathaway resume); ECF No. 74-3 (Vice resume), the Court is not persuaded that these are specialized qualifications courts consider under the standard for reasonable rates for paralegals.  The law students are otherwise fairly inexperienced in legal matters, and their work in this case was generally limited to legal research and summarizing.  Nevertheless, when considering the students' contributions to the case, their experience, and the other *Johnson* factors, the Court concludes that $100 is a reasonable hourly rate for the three law students.

## B. Reasonably Expended Hours

Having determined the reasonable rates for each timekeeper, the Court next considers whether the hours expended were reasonable.  To make this determination, a court reviews "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see also R.P.*, 2022 WL 1239860, at *5.  A court must then "take[] account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).  Because a "request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437, nor

should a trial court feel the need to "become [a] green-eyeshade accountant[]," *Fox v. Vice*, 563 U.S. 826, 838 (2011), a court does not need to "engage in a painstaking line-item review of each billing entry" when determining if a particular reduction in compensable hours is warranted, *R.P.*, 2022 WL 1239860, at *5. Instead, "[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application . . . ." *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted). The Court will address the reasonableness of the hours expended on the administrative proceeding and this federal action separately.

### 1. Administrative Proceeding

For attorneys' work during the administrative proceeding, Plaintiffs billed 285.7 hours of work. *See supra* p. 8. For paralegals' and interns' work during that proceeding, Plaintiffs billed 17.7 hours of work. *Id.* The DOE argues that these hours were excessive, and should be reduced wholesale by 30%. *See* Opp. at 21. In particular, the DOE contends that Plaintiffs' firm used "improper staffing" when Ms. Kule-Korgood – the most senior team member – did most of the work on the matter, and she also staffed the matter with eight additional attorneys. *Id.* at 22-23. The DOE also argues that many of the hours billed by Plaintiffs reflect duplicative work (such as re-reviewing the transcripts from prior proceedings), and excessive work (such as over-preparing for hearings and spending disproportionate time on the closing brief). *Id* at 23-25. Because the Court agrees, in part, with the DOE that some of the hours billed in the administrative action were excessive, the Court concludes that a modest reduction is warranted.

As an initial matter, however, the Court is not persuaded that the fees were excessive due to overstaffing, the team's use of summaries for transcripts, or the time spent re-reviewing transcripts or the record prior to each proceeding. *See* Opp. at 22-24. As reflected in Section A, *supra* p. 8, and in the tables set forth below, only four attorneys billed hours on the

administrative matter (Ms. Kule-Korgood, Ms. Goldberg, Ms. Epstein, and Ms. Ayre).  The other

four attorneys separately assisted with the federal proceeding.  Also, due to the protracted nature

of the hearing, Plaintiffs' attorneys needed to review materials to refresh their memories prior to

a proceeding.  Nothing in the record indicates that these delays or additional hearing dates were

the fault of Plaintiffs.  In fact, the record suggests that the DOE itself contributed to the

prolonged nature of the proceedings; in one instance, a DOE witness failed to show up for a

continuation of her cross-examination.  *See* MKK Reply Decl. ¶ 15; *see also* ECF No. 31-2, at

15-16.  In other instances, it appears the DOE asked for adjournments only days before a

proceeding, after Plaintiffs' counsel had already prepared.  MKK Reply Decl. ¶¶ 7-10.  And it

was the DOE who necessitated briefing regarding the second amended IEP decision and the

removal of A.K.'s paraprofessional.  *Id.*  ¶¶ 46-47, 52-53.

Nor is the Court persuaded that Plaintiffs' hearing preparation time was excessive.  The

DOE admits that cumulatively, Ms. Kule-Korgood billed 82.78 hours in preparation for hearings

that in total lasted 21 hours.  Nicholson Decl. ¶ 16.  This equates to roughly a 4:1 ratio for

hearing preparation time to hearing time.  "For a *contested* hearing, courts in this district have

reasoned that roughly six hours of preparation for every one hour of hearings is appropriate."

*B.C. v. N.Y.C. Dep't of Educ.*, No. 21-cv-02840 (ER), 2022 WL 3214374, at *8 (S.D.N.Y. Aug.

9, 2022)*, remanded on other grounds*, No. 22-1918, 2022 WL 18871861, at *1 (2d Cir. Oct. 12,

2022).  Ms. Kule-Korgood's overall preparation hours are therefore reasonable for this hearing.

Nevertheless, some of the hours billed during the administrative proceeding appear to be

disproportionate to the scope of the proceeding, which dealt only with one academic year.  *See*

IHO Decision at 4.  In particular, the Court notes that, other than being contested and requiring

quick responses to issues raised by the DOE, the parties have not indicated that the

administrative proceeding involved especially novel issues of the law.  Moreover, much of the

hours billed are attributable to the most experienced attorney, Ms. Kule-Korgood.  *See, e.g.*, MKK Bills at 31 (billing 190.69 hours for administrative proceeding).  While the Court does not fault the effort put into this litigation by Plaintiffs' counsel, and in particular by Ms. Kule-Korgood, the Court agrees with the DOE that much of Ms. Kule-Korgood's billed time for research and writing could have been billed by a more junior attorney at a lower rate.  For example, Ms. Kule-Korgood did most of the work on the closing brief – for which the firm billed 72.17 hours.  *See* MKK Reply Decl. ¶ 51.  While she asserts it was most efficient for her to do that work since she litigated most of the hearing, *id.*, other attorneys were involved, and cost-wise, it would have been more reasonable for them to spend time researching and drafting the brief.  *See, e.g.*, MKK Bills at 18 (billing 8.75 hours "reviewing record for closing brief" and "creating outline for closing brief"); *id.* (billing both 7.5 hours and 12.25 hours to drafting closing brief).  To be sure, the pieces of the closing brief in the record appear to be diligently researched and well-written.[11]  Nevertheless, courts in this District have found "somewhat excessive" hours worked on a closing brief that are less extensive than the hours billed here. *See, e.g.*, *S.P. v. N.Y.C. Dep't of Educ.*, No. 20-cv-08380 (ALC) (SN), 2022 WL 109266, at *8 (S.D.N.Y. Jan. 11, 2022) (finding that attorney's "39.1 hours billed to drafting and revising the post-hearing brief" and other attorneys' "29.1 hours billed for the same" merited a 20% reduction, even though briefing was extensive and necessary)*, report and recommendation adopted*, 2022 WL 484855 (S.D.N.Y. Feb. 16, 2022).  Other courts in this District routinely make reductions when they determine that the hours billed were excessive.  *See M.M. v. N.Y.C. Dep't of Educ.*, No. 20-cv-06915 (ER), 2022 WL 3043218, at *10 (S.D.N.Y. Aug. 2, 2022)

---

[11] It does not appear that the entire closing brief is contained in the sealed Administrative Record in this case.  *See* ECF No. 31-12 (containing even-numbered pages, 14-30 of Plaintiffs' closing brief).

(collecting cases). Therefore, because the Court finds that Ms. Kule-Korgood's hours billed in the administrative proceeding, and with respect to the closing brief in particular, are "somewhat excessive," it will apply a 20% reduction to her hours for the administrative proceeding.[12]

Ms. Kule-Korgood also billed 22 hours for travel. *See* MKK Bills at 31. Because this case presumably involved travel from Queens, New York, where Kule-Korgood & Associates is located, to the hearing location in Manhattan, the Court finds that the amount of time billed to travel is excessive. Accordingly, the Court exercises its discretion to reduce those hours by 50%. As set forth above, and upon careful review of the parties' submissions, the record in this case, and the governing legal standard, the Court awards the following attorneys' fees for the administrative proceeding:

| Administrative Proceeding: Attorneys' Awarded Fees & Hours | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Total** |
| Michele Kule-Korgood | $500 | 152.55 | $76,275 |
| Kule-Korgood (Travel) | $250 | 11 | $2,750 |
| Lauren Goldberg | $300 | 31.18 | $9,354 |
| Goldberg (Travel) | $150 | 2 | $300 |
| Kira Epstein | $300 | 26.82 | $8,046 |
| Melissa Ayre | $250 | 13.01 | $3,252.50 |
| **Total** | | **236.56** | **$99,977.50** |

| Administrative Proceeding: Paralegals/Interns' Awarded Fees & Hours | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Total** |
| Noelle Giesse | $125 | 7.44 | $930.00 |
| Michele Hutchinson | $125 | 2.09 | $261.25 |
| Lauren Riddell | $100 | 8.17 | $817.00 |
| **Total** | | **17.7** | **$2,008.25** |

---

[12] The Court is also unpersuaded by the DOE's argument that much of Ms. Kule-Korgood's (and other attorneys') time was improperly billed to administrative or clerical tasks. Opp. at 26. The tasks to which the DOE points are not as clearly clerical as the DOE suggests, and in any event, the Court's 20% reduction of Ms. Kule-Korgood's hours is sufficient to account for any stray clerical tasks she performed.

### 2. Federal Litigation

For attorneys' work during the present federal action, Plaintiffs billed 219.01 hours of work; 117.05 of those hours were billed by Ms. Kule-Korgood, and 71.50 were billed by Ms. Saideman, who was hired to assist with the attorneys' fees motion. *See supra* p. 8-9.  For paralegals' and interns' work during that proceeding, Plaintiffs billed 72.14 hours. *Id.*  The DOE argues that these hours were excessive, and should be reduced wholesale by 50%.  Opp. at 26-28. In particular, the DOE takes issue with the hiring of Ms. Saideman, and the duplicative and excessive nature of much of the legal research done by Plaintiffs' counsel on this straightforward fee application. *See* Opp. at 27.  Because the Court agrees that the hours billed in this federal action are duplicative and excessive in light of the straightforward nature of this fee action, the Court agrees that a 50% reduction is warranted and necessary to achieve "rough justice." *Fox*, 563 U.S. at 838 ("[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").[13]

As an initial matter, the Court recognizes that Ms. Kule-Korgood and her firm, and Ms. Saideman, have only rarely had to seek fees from a court in similar actions. *See* MKK Decl. ¶ 64; Saideman Decl. ¶¶ 11, 24.  Many courts in this District significantly reduce hours billed in a federal action, particularly where an attorney is able to use "standardized forms and documents." *N. L-C.*, 2022 WL 831820, at *5 (collecting cases).  Here, the attorneys likely had to prepare new original submissions. *See* Reply at 9 (noting that "legal work entailed in this

---

[13] Because the Court's award for fees in the administrative action is greater than the DOE's $90,000 settlement offer, the Court need not address the DOE's arguments that the award for the federal action should be reduced because Plaintiffs rejected that offer. *See* Opp. at 20-21 (collecting cases); *see also* 20 U.S.C. § 1415(i)(3)(D)(i).

motion was original and not 'cut and pasted' from prior cases filed by the firm").[14]

Nevertheless, Plaintiffs' hours are still excessive in light of the straightforward subject matter of

an attorneys' fees motion and extensive case law in the area.

"Courts in this District . . . routinely reduce the hours spent on attorneys' fees litigation

when those actions concern only the 'simple and straightforward issue' of 'the reasonable

amount of fees and costs that Plaintiff's attorneys should be paid for prevailing on behalf of the

Plaintiff.'" *J.R.*, 2021 WL 3406370, at *6. For instance, in *J.R.*, the Court reduced the 82.8

hours counsel had spent on the federal fee action by 25%. *Id.* Other courts have similarly

reduced hours spent on an attorneys' fees motion by 25%, and sometimes up to 50%. *See, e.g.*,

*M.M.*, 2022 WL 3043218, at *10 (reducing 59.9 hours spent on federal practice by 25%); *B.C.*,

2022 WL 3214374, at *9 (reducing hours spent on federal action by 25%); *M.D. v. New York*

*Dep't of Educ.*, No. 20-cv-06060 (LGS), 2021 WL 3030053, at *6 (S.D.N.Y. July 16, 2021)

(reducing 76.2 hours Cuddy Law Firm spent on federal action by 50%); *C.L. v. N.Y.C. Dep't of*

*Educ.*, No. 21-cv-07094 (RA), 2022 WL 17156715, at *3-4 (S.D.N.Y. Nov. 22, 2022) (reducing

federal action fees by 50%).

In gauging reasonable fees, courts also generally "limit awards for time spent litigating an

IDEA fee application to a fraction . . . of the time spent on the underlying administrative

proceeding." *C.L.*, 2022 WL 17156715, at *3-4 (internal brackets omitted) (quoting *G.T. v.*

*N.Y.C. Dep't of Educ.*, No. 18-cv-11262 (GDB) (BCM), 2020 WL 1516403, at *10 (S.D.N.Y.

Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 1503508 (S.D.N.Y. Mar. 30,

2020)). Here, Plaintiffs have billed nearly as many hours to the instant fee application as they

---

[14] It is the DOE who appears to have re-used portions of its opposition papers, as it indicates that
a court may reduce a fee award when considering billing practices "across many similar federal
fee applications." Opp. at 22. The Court is unaware of – and no party has pointed it to – similar
federal fee actions filed by Plaintiffs' attorneys here.

did to the administrative proceeding.  Senior attorneys billed significant time to this motion (Ms.
Kule-Korgood billed 117.05 hours, and Ms. Saideman billed 71.50 hours), and more junior
timekeepers also spent considerable time on research and related tasks (Ms. Thomas billed 28.8
hours, and Ms. Vice billed 50.16 hours).  *See supra* p. 8-9.  Spending extensive time on legal
research is unreasonable given that "[t]he legal basis for fee petitions is well-plowed acreage,
leaving the task of the attorney to marshal the facts to support the number of hours expended on
the underlying matter."  *B.B. v. N.Y.C. Dep't of Educ.*, No. 17-cv-04255 (VEC) (SDA), 2018 WL
1229732, at *3 (S.D.N.Y. Mar. 8, 2018).  Nothing in the instant attorneys' fee motion presents
novel or difficult issues of law.  This District has extensive and varied precedent from recent
years that provides a clear outline of how to proceed with motions of this type.  Accordingly, the
Court finds that the hours billed to the federal action are excessive, and a reduction of 50% is
warranted.  Even with this reduction, Plaintiffs will have billed roughly 145.6 hours to the fee
action, which is still a significant percentage of the time spent on the administrative proceeding.
Nevertheless, "[t]his revised modification comes closer to aligning with the awards generally
issued in this district, namely, 'awards for time spent on fee applications [which] have ranged
between 8% and 24% of the award for time spent on the case itself.'"  *C.L.*, 2022 WL 17156715,
at *4 (quoting *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 371 (S.D.N.Y. 2018)).

     As set forth above, and upon careful review of the parties' submissions, the record in this
case, and the governing legal standard, the Court awards the following attorneys' fees for the
federal action:

| Federal Proceeding:  Attorneys' Awarded Fees & Hours | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Total** |
| Michele Kule-Korgood | $500 | 58.525 | $29,262.50 |
| Ellen Saideman | $450 | 35.75 | $16,087.50 |
| Joseph DaProcida | $300 | 0.83 | $249.00 |
| Emily Thomas | $200 | 14.4 | $2,880.00 |
| **Total** | | **109.505** | **$48,479.00** |

| Federal Proceeding:  Paralegals/Interns' Awarded Fees & Hours | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Total** |
| Noelle Giesse | $125 | 0.95 | $118.75 |
| Michele Hutchinson | $125 | 0.04 | $5.00 |
| Fiona Hathaway | $100 | 10 | $1,000.00 |
| Amanda Vice | $100 | 25.08 | $2,508 |
| **Total** | | **36.07** | **$3,631.75** |

## C.  Costs

Plaintiffs also seek reimbursement for $653 in costs from the filing fees and parking

expenses.  Br. at 20-21.  Because the DOE does not appear to have objected to these costs, and

because these costs are generally awardable, *see B.C.*, 2022 WL 3214374, at *10 (awarding costs

for filing fees and parking), the Court will award them to Plaintiffs.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for summary

judgment and attorneys' fees with the modifications to hourly rates and billable hours as set forth

above.  In total, Plaintiffs are entitled to the following:

| Total Award | | | |
|---|---|---|---|
| **Firm** | **Administrative Proceeding** | **Federal** | **Total** |
| Kule-Korgood & Associates | $101,985.75 | $36,023.25 | $138,009.00 |
| Ellen Saideman | $0 | $16,087.50 | $16,087.50 |
| **Total** | **$101,985.75** | **$52,110.75** | **$154,096.50** |

The Clerk of Court is respectfully directed to enter judgment in accordance with this

Order.

The Clerk of Court is also respectfully directed to CLOSE this case.

Dated:  March 10, 2023
        New York, New York

                                        SO ORDERED.


                                        _Jennifer Rochon_
                                        JENNIFER L. ROCHON
                                        United States District Judge